UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUN 1 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-186-GWU

JAMES M. PERRY,                                                    PLAINTIFF,

VS.                   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Perry

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Perry

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Perry

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using t6 .....he term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Perry

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James M. Perry, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of asthma. (Tr. 15). Nevertheless, based in part on the testimony of a medical expert (ME) and a vocational expert (VE), the ALJ determined that Mr. Perry retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 16-19). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had restrictions on not being exposed to dust, fumes, smoke, chemicals, noxious gases, or extreme temperature or humidity changes. (Tr. 244). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

7

Perry

Mr. Perry alleged disability beginning June 10, 1999 due to chronic asthma and shortness of breath, which left him easily tired. (Tr. 52, 68).[1] At the hearing before the ALJ, Mr. Perry testified that he had been asthmatic his entire life, but the problem was steadily becoming worse, and he had given up his job as a carpet installer in 1998 because he was missing two or three days of work per week due to fatigue. (Tr. 228-9, 239). He also alleged having pain in his back and right leg but admitted that these problems would not have prevented him from working. (Tr. 239).[2] Mr. Perry stated that his treating physician had been Dr. Stanford Weiler, but Dr. Weiler had retired a year before the January 7, 2003 hearing, and he had been unable to find another physician who would treat him without being paid in advance. (Tr. 233-6). He testified that he had formerly been a smoker, but had quit approximately two years earlier, although it had not helped his condition at all. (Tr. 230).

Some of the medical evidence in the transcript predates the alleged onset date, and nearly all of the evidence from Dr. Weiler is prior to April, 2001, the earliest date at which the plaintiff would be entitled to SSI. However, Dr. Weiler's handwritten office notes indicate that he treated Mr. Perry for asthmatic bronchitis in the late 1990s with medications. (Tr. 158-60). In October, 1998, Dr. Weiler noted

---

[1] The protective filing date of the plaintiff's SSI application was April 20, 2001, meaning that he would not be eligible for benefits prior to this date. (Tr. 52).

[2] No medical evidence related to back or leg problems was submitted.

8

that the plaintiff had had asthma problems for "several days," and had not smoked for over a year. (Tr. 160). In May, 1999, the plaintiff stated that he had quit smoking "eight months ago." (Tr. 159). By December, 1999, Dr. Weiler indicated that Mr. Perry was "remarkably free of exacerbations since smoking cessation," although he had experienced an exacerbation over the last two or three days. (Tr. 158). He was seen again in May and July 2000 after running out of medication, and was given samples. (Tr. 157). More samples were given in 2001, and he was also treated for a respiratory infection. (Tr. 155-6).

State agency physicians who reviewed the record in July and September, 2001, stated that Mr. Perry's impairment did not impose any significant work-related functional restrictions. (Tr. 161-2).

Dr. Weiler submitted a brief note dated May 22, 2003 stating that he had treated the plaintiff for several years prior to his retirement, primarily for asthma and recurrent episodes of bronchitis. (Tr. 189). In his opinion, Mr. Perry did not have the "stamina or endurance to successfully complete an eight-hour workday." (Id.). No objective findings are given to support this conclusion.

Mr. Perry was briefly hospitalized in July, 2003 for weakness and an increasing cough, and was eventually diagnosed as having a lower gastric tract infection and chronic obstructive pulmonary disease. (Tr. 194). It was also noted that he smoked one pack of cigarettes a day. (Id.). A chest x-ray showed findings compatible with chronic obstructive pulmonary disease and it was noted that chronic

infiltrates in the right upper lung field appeared to have increased slightly since a prior chest x-ray in 1998 (Tr. 142), which was suspicious for tuberculosis, in the opinion of the radiologist. (Tr. 202). Mr. Perry's condition improved with intravenous steroids and antibiotics, and he was discharged with instructions not to smoke. (Id.). Nothing was said about limits on activity. (Tr. 195).

A consultative examination was conducted by Jodie Bentley, D.O., in June, 2001, and included a pulmonary function test indicating only a mild restriction. (Tr. 146-53). After counsel for the plaintiff objected to Dr. Bentley's report based on lack of information regarding Dr. Bentley's licensing and qualifications (Tr. 191-92), the ALJ determined that she would not afford this report significant weight (Tr. 14).

The ALJ submitted interrogatories to a medical expert, Dr. Murray Gilman, a board-certified specialist in internal and pulmonary medicine. (Tr. 216). Dr. Gilman reported that the plaintiff had moderately severe chronic obstructive pulmonary disease which would restrict him to "medium" level work, and which would not be expected to compromise his ability to perform sedentary level exertion. (Tr. 217-19). He noted that a pulmonary function study (conducted in connection with Dr. Bentley's examination, but not actually performed by Dr. Bentley) from June, 2001 documented an FEV1 of 3.06 liters, or 69 percent of predicted values (Tr. 151-2), which would permit Mr. Perry to perform sedentary, light, and medium work. (Tr. 219). Dr. Gilman completed a physical residual functional capacity form stating that the plaintiff could occasionally lift up to 50 pounds, could frequently carry up to 10

pounds, could sit, stand, and walk for six hours each in an eight-hour day, could frequently perform all postural activities, and would have a moderate restriction on exposure to marked changes in temperature and humidity or exposure to dust, fumes, and gases. (Tr. 220).

The ALJ gave the plaintiff the benefit of the doubt in restricting him to light, rather than medium, level exertion.

The plaintiff argues on appeal that it was error not to accept Dr. Weiler's opinion that he could not successfully complete an eight-hour workday. While the opinion of a treating physician is entitled to great deference, it must be adequately supported by objective signs, symptoms, or laboratory findings if it is to be given complete deference. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). In the present case, Dr. Weiler did not cite any specific findings that would support his assertion that the plaintiff could not complete an eight-hour day. His actual office notes indicate that the plaintiff normally did well after refraining from smoking, apart from occasional exacerbations for which he required treatment. The various dates given throughout the record for the plaintiff stopping smoking suggest that there were times when he also resumed smoking, and, in fact, his hospitalization records from July, 2003 state that he was then smoking one pack a day. (Tr. 194). This was approximately six months after he had testified at the administrative hearing that he

Perry

had not smoked in two years. (Tr. 230).[3] Therefore, regardless of whether or not Dr. Weiler's statement was submitted for review by the ME, the ALJ was not bound to give it controlling weight, and could reasonably have relied upon the opinion of the reviewing expert.

The decision will be affirmed.

This the ___14___ day of June, 2006.

*G. WIX UNTHANK*
SENIOR JUDGE

---

[3] The Sixth Circuit has been critical of claimants who seek benefits for smoking-related or smoking-exacerbated impairments and who have ignored medical advice to stop smoking. See, e.g., Sias v. Secretary of Health and Human Services, 861 F.2d 475, 480 (6th Cir. 1988).

12